34 C.C.P.A.(Patents)

## Application of CROSSLEY et al.

### Patent Appeal No. 5181.

Court of Customs and Patent Appeals.
January 7, 1947.

Rehearing Denied Feb. 7, 1947.

Sol Shappirio, of Washington, D. C. (Paul Kolisch, of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C., (H. B. Ledman and R. F. Whitehead, both of Washington, D. C., of counsel); for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office rejected all of appellants' claims, 14, 15, 16, 17 and 18, in their application for a patent on "improvements in the production of chemical pulp." Upon appeal to the Board of Appeals the examiner's decision was affirmed and appellants have here appealed from the board's decision.

The alleged invention described and claimed in appellants' application relates to the production of chemical pulp for the manufacture of white paper from unbarked wood, which is that portion of trees such as twigs or shoots not exceeding one and one-half inches in diameter, which process comprises cooking such wood under superatmospheric pressure in a chemical pulping liquor.

It is stated in appellants' application that at present the principal raw material for chemical pulp is the wood of forest trees and that in cutting these trees, which are usually about twenty-five years of age, the branches are lopped off and are left lying in the woods or are burned; that the logs, and sometimes the larger peeled branches, are transported to mills for use in making pulp; that the "loppings" of the trees are considered waste material and, if used at all, are used for fuel, and that the same is true of the annual prunings of domestic trees, including orchard trees. Owing to the fact that it was believed necessary to remove the bark from these small pieces of wood if chemical pulp suitable for use in making white paper was desired, it was thought that the only utility of such loppings, aside from fuel, would be to make a low grade paper and that the bark would form a discoloration that could not be economically bleached.

Appellants, for the most part, base their claimed invention upon the alleged discovery that the stated objection to the use of bark applied only to bark of a certain age and that the objectionable bark contained living cells known as cork cells which are absent in the young shoots or twigs of the size heretofore referred to.

While appellants seem to prefer twigs of about three-eighths of an inch in diameter, it is stated that it is safe to use twigs having a diameter up to one and one-half inches without removing the bark, it being explained that "the permissible variations in the application of this general rule can be determined in particular circumstances by analysis of the bark of which it is proposed to make use." Two of the claims limit the diameter of the unbarked wood to not over one and one-half inches and one of the claims calls for a maximum diameter of three-eighths of an inch, while the others mention no definite diameter measurement of the twigs.

Appellants state in their application that twigs having a maximum thickness of about three-eighths of one inch are separated from other wood and treated alone and that the claimed process comprises "any one of those now ordinarily used, namely, the sulphite, soda or sulphate process, depending on the character of the pulp desired, or any other one found suitable," and that "The conditions under which the raw material is acted on by the treating liquor may be substantially the same as those now used in commercial practice with the liquor in question, although variations in these conditions may be found possible." After cooking is completed, the pulp is blown from the digester and is then "washed, refined, bleached and otherwise subsequently treated in the same manner as ordinary soda pulp."

Claim 14 is regarded as illustrative of the appealed subject mater and follows:

"14. The method of producing pulp suitable for the manufacture of white paper, which comprises reducing to pulp a material including a substantial proportion of unbarked wood of coniferous or deciduous trees, which wood has a diameter before splitting or crushing of not over one and one-half inches and a bark free from scale, solely by cooking said material including said unbarked wood in a chemical pulping liquor under superatmospheric pressure."

Claim 15 substitutes "caustic soda liquor" for the "chemical pulping liquor" of claim 14. Claim 16 omits the size limitation and calls for "unbarked wood * * * the bark of which wood contains substantially no cork." Claim 17 is specific to "unbarked fruit tree prunings," and claim 18 to "unbarked twigs * * *, which twigs have a maximum diameter of about three-eighths of an inch."

The examiner based his rejection of the claims upon the following patents:

Vautier, 33,551, October 22, 1861;

Allen, 323,771, August 4, 1885;

Johnson (British), 437, of 1861;

Balmanno (British), 7,794, of 1838;

Duda (British), 17,803, of 1911;

and called attention to two publications, to wit:

Pruning Book by Bailey, published 1898 by MacMillan Co., New York, N. Y., pages 35 to 37;

The Manufacture of Pulp and Paper, Vol. 3, 3rd Ed., 1937, published by McGraw-Hill Book Co., New York, N. Y., pages 37 and 38 of Section 1.

The Vautier patent discloses a process of extracting the filamentous matter of a silky, cottony and the like nature which is contained in the bark and leaves of mulberry and other trees and shrubs so as to render the product thus obtained convertible into yarns and tissue.

Allen taught the making of paper pulp of the limbs and bark of trees previously thought to be useless for pulping, by boiling the wood which had been split and crushed. This was done in water, acid or alkalies, and the material was then crushed, ground, and pulped. No mention is made of the size of the limbs nor of the nature of the bark thereof.

The British patent to Johnson discloses the making of pulp from "the young green shoots of all kinds of trees and shrubs."

The British patent to Balmanno discloses the making of paper pulp from the "bark of trees and young shoots of trees." There is nothing in this patent that suggests that the bark of trees can be generally used for making white paper and the reference is cited solely for the reason that it discloses the use of young shoots of trees in making pulp.

The British patent to Duda speaks of utilizing the bark of osiers and evidently was cited to meet the term "twigs," in claim 18 at bar, it being noted that the term "shoots" instead of "twigs" is used by the first two British patents.

In addition to rejecting claim 14 as being unpatentable over British patent 437, the examiner rejected this claim on the U. S. patent to Allen, in view of any of the British patents or Vautier, and pointed out that Allen pulps the limbs and bark of various trees by boiling in water, acid, or alkalies. The examiner held that no invention is

seen in selecting limbs with bark having no "fiberless part."

Twenty-four affidavits, embracing about sixty pages of the record, were submitted by appellants and considered by the tribunals below. Affidavits are often very helpful to the Patent Office tribunals and the courts in considering a patent application. A German trade publication and a Russian article, both relating to the pulp-making industry, are also found in the record, having been submitted to the examiner by appellants.

The affidavits are chiefly to the effect that affiants, as men skilled in the art, believed that unbarked prunings or twigs or shoots could not be used for making pulp suitable for white paper and that upon experimentation and trial it was a source of surprise that a satisfactory result was obtained.

Appellants stress this affidavit evidence as important since it is alleged to show that it never before occurred to anyone in the industry as being possible to use unbarked twigs to make pulp for white paper. Appellants urge that the "attitude of scepticism and incredulity on the part of those skilled in the art" towards what appellants finally proved to be true is a proper matter for the consideration of this court in determining whether or not what appellants have done amounted to invention.

The board, in affirming the action of the examiner in rejecting the appealed claims, said in part:

"It is our opinion that the term 'young green shoots' of the above British patent is a disclosure of material not over one and one half inches. The Examiner cites the reference Pruning Book is [sic] support of definition of tree shoot. We agree with the Examiner's view of the situation.

"The publication Manufacture Pulp & Paper, while confirming applicant's theory of reason for avoiding older branches also equally confirms the reason for Johnson's particular specification to use the 'young green shoots' of trees. The publication discloses that bark on parts of a tree other than that formed during the first years of the life of the tree (or obviously, its shoots and branches) has cork cells and is unsuitable for paper and must be removed.

"From the prior art it would seem to be no more than an obvious feature that older branches having cork cells in their bark should be discarded if any attempt is to be made of using branches, shoots or twigs. However, we regard Johnson as fully anticipatory of the matter of the appealed claims.

"The additional rejection of Claim 14 on Allen with British patents 437, 7794, 17,803 and Vautier is also affirmed. That patent states that in making pulp 'I take for example the chestnut tree using both limbs and bark if desired and reduce the same to convenient length and size for use, generally removing the ross or fiberless part of the bark by hand or proper machinery.' It appears that the last part of the quoted sentence does not apply in case one wishes to utilize the bark suggested in the first part of the sentence. In respect to this reference it would be assumed, in view of the known characteristics of bark, that branches having older or cork component bark would not be used directly but only younger branches or shoots. This ground of rejection is affirmed.

"The rejection of the remaining claims by the Examiner is found to be warranted. It appears that the minor features presented by these claims are not of patentable importance if the principal conception fails.

"We are not impressed by the affidavits of record. It is not surprising that practical paper manufacturers generally would not come upon any conception of using small branches and twigs as a source of paper pulp. We believe this would be largely because it would seem not commercially feasible or profitable to try to collect, transport and use such generally bulky material. This is a condition known to be frequently prohibitive of use of straw, a good paper material but often not economically feasible. We cannot agree that it would be unobvious that paper pulp might not be prepared from shoots to small branches. It is regarded as at least suggestive of being possible and to be only a matter of commercial practicability rather than technical or inventive matter."

The board also stated:

"It is conceded by applicant that the process of digestion employed is not important. While claims 15 and 17 broadly refer to caustic soda as the digesting agent it seems that patentable novelty is not attributed to it."

Appellants have challenged this statement in a reason of appeal to this court and assert that no such concession was made. However, they offer no convincing argument that such a concession would not have been proper. Appellants' application states that the chemical treatment for preparing the pulp "may be any one of those now ordinarily used, namely the sulphite, soda or sulphate process, depending on the character of the pulp desired, or any other one found suitable." This is also quoted in part in appellants' brief. In view of this statement we think it is immaterial whether appellants did or did not before the board concede that the process of digestion employed is not important.

For novelty in the claims it seems to us that appellants depend upon the character of the material selected rather than upon any new cooking or pulping treatment.

We agree with the conclusions reached by the board. In view of all the suggestions of the art cited we feel certain that it would not be inventive to use an old process on unbarked twigs less than one and one-half inches in diameter which contain no cork cells in the bark, regardless of any showing of surprise upon making the experiment and finding that suitable pulp for white paper could be produced.

Appellants take exception to the remark of the board that paper manufacturers would not use small branches and twigs as a source of paper pulp "largely because it would seem not commercially feasible or profitable to try to collect, transport and use such generally bulky material," and

contend that the affidavits of record disclose, in substance, that the reason why those skilled in the art have not seen fit to utilize small branches for making white paper pulp was because it would be too expensive to remove the bark and it was thought that the physical properties of the paper would be unsatisfactory if made from immature woods. This fact does not show that the board was in error in its conclusion. Even though those skilled in the art of paper pulp making had in mind the removal of the bark and doubted the value of using immature wood it does not necessarily follow, in view of the availability of large quantities of more satisfactory material, that paper pulp makers regarded the handling of such bulky material to be a commercially feasible and profitable enterprise.

The board pointed out that:

"The publication Manufacture Pulp & Paper * * * discloses that bark on parts of a tree other than that formed during the first years of the life of the tree (or obviously, its shoots and branches) has cork cells and is unsuitable for paper and must be removed."

So it was not appellants who discovered that the absence of cork cells or fiberless portions was found in the bark of young shoots, and certainly the disclosures of the prior art justify the conclusion that, knowing these facts, it would not involve invention, when it became commercially profitable for any reason, to use small shoots and to pulp them in the usual manner and arrive at a satisfactory result.

In view of our conclusions above stated, it is not deemed necessary to answer any of the other contentions on the part of appellants, and the decision of the board is affirmed.

Affirmed.